**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| MILLENNIUM HEALTH & FITNESS INCORPORATED,<br><br>Plaintiff,<br><br>v.<br><br>SHERRY K. MORTON,<br><br>Defendant. | Civil Action No. 1:26-cv-00135-JLH |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**

*/s/ Sidney S. Liebesman*
Sidney S. Liebesman (DE ID 3702)
Carmella L. Cinaglia (DE ID 7032)
FOX ROTHSCHILD LLP
1201 N. Market St., Suite 1200
Wilmington, DE 19801
Tel.: (302) 622-4237
sliebesman@foxrothschild.com
ccinaglia@foxrothschild.com

Date: April 2, 2026

*Attorneys for Defendant Sherry K. Morton*

## TABLE OF CONTENTS

SUMMARY OF REPLY ARGUMENT ........................................................................... 1

REPLY ARGUMENT ............................................................................................... 1

I. MHF's Claims Arise From the Same Transaction as BCAP's Counterclaims in the First Action. ............................................................................................ 1

II. MHF Cannot Demonstrate a Jurisdictional Impediment to Presenting Its Claims in the First Action. ..................................................................................... 5

A. MHF's Diversity Argument Is Self-Defeating. ..........................................5

B. BCAP's Standing Is Irrelevant to the Claim-Splitting Analysis.................6

III. The Timing and Circumstances of This Filing Confirm Strategic Claim-Splitting.7

IV. MHF's "Regular Distributions" Argument Is a Red Herring. ............................... 9

V. MHF's Proposed Stay Does Not Cure the Claim-Splitting Problem.................... 10

CONCLUSION.......................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Angst v. Royal Maccabees Life Insurance Co.*,
77 F.3d 701 (3d Cir. 1996)....5

*Balin v. Amerimar Realty Co.*,
1995 WL 170421 (Del. Ch. 1995)....6

*Brambles USA, Inc. v. Blocker*,
731 F. Supp. 643 (D. Del. 1990)....6

*Feenix Payment Systems, LLC v. Blum*,
2024 WL 3861376 (Del. Super. Aug. 19, 2024)....3, 4, 6, 10

*Ford v. Sedgwick Claims Mgmt. Servs., Inc.*,
2020 WL 2557141 (Del. Super. May 20, 2020)....6, 10

*Freeport-McMoRan, Inc. v. K N Energy, Inc.*,
111 S. Ct. 858 (1991)....5

*Harris v. Illinois-California Express, Inc.*,
687 F.2d 1361 (10th Cir. 1982)....5

*LaPoint v. AmerisourceBergen Corp.*,
970 A.2d 185 (Del. 2009)....3

*Leonard v. Stemtech International, Inc.*,
2012 WL 3655512 (D. Del. Aug. 24, 2012)....8

*Maldonado v. Flynn*,
417 A.2d 378 (Del. Ch. 1980)....*passim*

*Nicholas Goureau, et al. v. Marcus Lemonis, et al.*,
2021 WL 1197531....2, 3

*United States v. Athlone Industries, Inc.*,
746 F.2d 977 (3d Cir. 1984)....1

*Walton v. Eaton Corp.*
563 F.2d 66 (3d Cir. 1977)....8

*Woolf v. Precision Technologies LLC*,
749 F. Supp. 3d 411 (W.D.N.Y. 2024)....3

*Zweigenhaft v. PharMerica Corp.*
2021 WL 6424061 (D. Del.Dec. 10, 2021)....................................................................4, 7

**Statutes**

28 U.S.C. § 1332........................................................................................................6

**Other Authorities**

Restatement (Second) of Judgments § 59, cmt.......................................................................7

## SUMMARY OF REPLY ARGUMENT

Plaintiff Millennium Health & Fitness, Inc. ("MHF") does not dispute the central facts that compel dismissal of this action. MHF does not deny that this action and the pre-existing litigation in this Court captioned as *Morton v. BCAP GDI 1, Inc*. (Case No. 24-cv-01432-JLH-EGT) (the "BCAP Litigation") both arise from the same alleged pre-closing withdrawals of approximately $7.4 million from MHF's corporate accounts, the same alleged deletion of corporate files, and the same alleged course of conduct by Morton in the weeks preceding the November 1, 2023 closing. MHF itself acknowledges that both cases "relate to money or data that belonged to MHF" and concedes that "if Morton was not permitted to take the money from MHF, then her doing so either was a violation of the SPA . . . or it was a violation of corporate governance." D.I. 22 at 2. MHF asks this Court to accept three propositions, none of which withstands scrutiny: (1) that different legal labels on the same underlying conduct create a different "transaction" for claim-splitting purposes; (2) that diversity jurisdiction prevented MHF from participating in the BCAP Litigation; and (3) that BCAP lacked standing to assert MHF's claims. Each argument fails.

## REPLY ARGUMENT

### I. MHF's Claims Arise From the Same Transaction as BCAP's Counterclaims in the First Action.

MHF's opposition relies heavily on the four-factor test from *United States v. Athlone Industries, Inc.*, 746 F.2d 977, 984 (3d Cir. 1984), to argue that the "acts complained of," "theory of recovery," "witnesses and documents," and "material facts" differ between the two cases. D.I. 22 at 14. But this framing misapplies the governing standard and mischaracterizes the record.

As a threshold matter, claim-splitting analysis under Delaware law does not require identical causes of action, identical parties, or mirror-image complaints. The inquiry is whether the claims are "transactionally defined" such that the later-filed action is merely an alternative

theory of recovery for the same course of conduct. *Maldonado v. Flynn*, 417 A.2d 378, 382–83 (Del. Ch. 1980). A later-filed action may be barred "even if it asserts additional theories or names additional defendants, so long as it arises from the same transaction or series of transactions." *Nicholas Goureau, et al. v. Marcus Lemonis, et al.*, 2021 WL 1197531 at *9–10.

MHF's attempt to parse the cases into separate "transactions" collapses upon examination. MHF concedes that both cases involve claims "having to do with MHF's funds and property." D.I. 22 at 7. Both cases allege that Morton withdrew the exact same $7.4 million from MHF's corporate accounts in October 2023, on the eve of closing. D.I. 20 at 13. Both cases allege that Morton directed the deletion of MHF's corporate files in August 2023 and subsequently destroyed a hard drive containing those files. AZ Superior Court Complaint p. 6*;* D.I. 20 at 14. The same bank records, balance sheets, deposition testimony, IT vendor interactions, and closing mechanics under the SPA would be central to any trial of either case. D.I. 20 at 13-14. MHF's "conversion" and "breach of fiduciary duty" claims are not new theories of recovery; they are the mirror image of BCAP's Counterclaim 3, which asserts that the same withdrawals breached the SPA. MHF itself concedes as much: "if Morton was not permitted to take the money from MHF, then her doing so either was a violation of the SPA . . . or it was a violation of corporate governance." D.I. 22 at 2. Relabeling an SPA breach as "conversion" does not transform a single course of conduct into a separate transaction for claim-splitting purposes.

The same evidence and witnesses are at the center of both cases. The same financial records, bank statements, and deposition testimony, including the testimony of Morton and David Thompson, are at issue in both proceedings. MHF's own Exhibit A (Bylaws) and the SPA are already in the BCAP record. MHF asserts that this case will involve different witnesses but fails to identify any new ones. As for Atruent and Aprio, both companies were subpoenaed for

depositions in the BCAP Litigation; BCAP withdrew its subpoena to Aprio one business day before the scheduled deposition, and Morton did the same with respect to Atruent. BCAP had every opportunity to take both depositions and simply chose not to pursue them.

MHF's effort to distinguish the cases based on timing, claiming that "the facts relating to this case took place before the SPA was signed" is unavailing. D.I. 22 at 5. BCAP's counterclaims likewise target Morton's pre-closing conduct: the pre-closing withdrawals, the pre-closing file deletions, and the pre-closing financial condition of MHF as delivered at closing. D.I. 20 at 12-13. Under the Restatement factors Delaware has adopted, the facts are related in time (October 2023), in origin (Morton's control over MHF's accounts and records), and in motivation (the alleged extraction of value before closing). *See LaPoint v. AmerisourceBergen Corp.*, 970 A.2d 185, 193 (Del. 2009); *Goureau*, 2021 WL 1197531, at *8.

MHF's reliance on *Woolf v. Precision Technologies LLC*, 749 F. Supp. 3d 411 (W.D.N.Y. 2024), is misplaced. D.I. 22 at 14. That decision applied New York law, not Delaware law. Delaware's claim-splitting doctrine, as articulated in *Maldonado*, *Goureau*, and *Feenix Payment Systems, LLC v. Blum*, 2024 WL 3861376 (Del. Super. Aug. 19, 2024), focuses on transactional identity, not on whether the claims arise from "different sources, instruments, or agreements." As *Goureau* explained, "[t]he fact that the stone, by design, killed two birds does not warrant two actions." 2021 WL 1197531, at *11. MHF's Complaint in this action is precisely that, a second action aimed at the same stone.

MHF also attempts to distinguish *Maldonado* by arguing that this case involves "two separate aggrieved parties (BCAP versus MHF) suing Morton in distinct capacities." D.I. 22 at 17. But *Maldonado* held that the linchpin is transactional identity and whether the claims arise from "but one transaction" not whether the nominal parties or legal theories are identical. 417

A.2d at 382. The court in *Feenix Payment* likewise recognized that differences in nominal parties are "of little importance" where the claims arise out of the same transaction and common nucleus of operative facts. 2024 WL 3861376, at *6. And in *Zweigenhaft v. PharMerica Corp.*, the court applied claim-splitting to dismiss a lawsuit filed by a shareholder of a prior plaintiff who was in privity with the earlier plaintiff regarding the same subject matter. 2021 WL 6424061, at *3–4 (D. Del. Dec. 10, 2021). The overlap here is greater than in *Maldonado*: the identical $7.4 million and the same actor, Morton, are at the center of both proceedings. Where the same money, the same conduct, and the same factual record link two proceedings, the claims arise from a single transaction regardless of the labels applied to them. 417 A.2d at 382–83.

MHF is BCAP's wholly owned subsidiary. D.I. 20 at 16. BCAP's counterclaims expressly seek indemnification for losses tied to MHF's financial condition and the alleged depletion of MHF's accounts. D.I. 20 at 13. MHF's Complaint seeks recovery of the same funds. AZ Superior Court Complaint p. 2. Whatever the nominal caption, the operative dispute is identical: whether Morton improperly extracted funds from MHF's accounts before closing, and what remedy follows from that conduct. The purchase price for MHF was $10 million; Morton took approximately $7.5 million in distributions, representing 75% of the purchase price, yet neither BCAP nor MHF raised any issue regarding those distributions until more than a year after closing. BCAP injected working capital into MHF the day after closing, which is consistent with Morton's position that the pre-closing distributions were contemplated by the parties. These facts are already part of the BCAP Litigation record, further demonstrating that MHF's claims arise from the same operative facts as BCAP's counterclaims.

## II. MHF Cannot Demonstrate a Jurisdictional Impediment to Presenting Its Claims in the First Action.

MHF's jurisdictional argument proceeds in two steps: first, that MHF could not join the BCAP Litigation without destroying diversity jurisdiction; and second, that BCAP lacked standing to assert MHF's claims. D.I. 22 at 17. Neither step survives analysis.

### A. MHF's Diversity Argument Is Self-Defeating.

MHF contends that because it was (and is) an Arizona corporation, and Morton was an Arizona citizen when the BCAP Litigation was filed, MHF could not join that proceeding without destroying diversity jurisdiction. D.I. 22 at 17. But Morton has been a citizen of Texas, not Arizona, since November 2020, more than three years before the sale of MHF and more than four years before the BCAP Litigation was filed on December 31, 2024. Morton possesses a Texas driver's license, is registered to vote in Texas, voted in Texas in 2024, and intends to remain there indefinitely. D.I. 16 (Declaration of Sherry Morton). Because complete diversity existed between MHF and Morton at all relevant times, MHF's entire jurisdictional preclusion argument collapses at the threshold.

Even if there had been a colorable diversity concern, well-established precedent demonstrates that MHF's claims could have been brought through intervention or joinder without destroying jurisdiction. See *Harris v. Illinois-California Express, Inc.*, 687 F.2d 1361, 1366–69 (10th Cir. 1982) (permissive intervention did not destroy diversity jurisdiction); *Angst v. Royal Maccabees Life Insurance Co.,* 77 F.3d 701, 705–06 (3d Cir. 1996) (diversity between intervening party and other parties unnecessary if supported by ancillary jurisdiction); *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 111 S. Ct. 858 (1991) (subsequent addition of a party does not destroy diversity jurisdiction). Had MHF sought to intervene, the complaint could have accurately alleged

Morton as a citizen of Texas. Diversity is determined as of the filing of the complaint, and at that time, complete diversity existed.

MHF's argument also fails because it was Morton, not BCAP or MHF, who chose to file the BCAP Litigation in federal court under 28 U.S.C. § 1332. The SPA's forum selection clause (Section 9.9) provided for jurisdiction in "state and federal courts located in the State of Delaware." D.I. 20-2 § 9.9. Morton could have filed in Delaware state court, where diversity jurisdiction would not have been required and MHF's joinder would have been unimpeded. MHF cannot claim a jurisdictional impediment that is the direct product of Morton's own litigation choices. *See Balin v. Amerimar Realty Co.*, 1995 WL 170421, at *4 (Del. Ch. 1995). Moreover, the SPA itself lists Morton's notice address as "1160 Snider Lane, Lucas, Texas 75002." D.I. 20-2, § 9.4(a)(i). BCAP and its counsel thus had documentary evidence of Morton's Texas domicile in the very agreement that governs the BCAP Litigation. Any purported ignorance of Morton's Texas citizenship was the product of MHF's and BCAP's own failure to investigate, not a genuine jurisdictional barrier.

**B. BCAP's Standing Is Irrelevant to the Claim-Splitting Analysis.**

MHF's argument that BCAP lacked standing to assert claims on MHF's behalf, relying on *Acrisure Holdings, Inc. v. Frey*, 2019 WL 1324943 (D. Del. Mar. 25, 2019), and *Brambles USA, Inc. v. Blocker,* 731 F. Supp. 643 (D. Del. 1990), misapprehends the claim-splitting doctrine. The relevant question is not whether BCAP had standing to bring MHF's specific legal theories, but whether MHF had the opportunity to present its claims in the first forum or whether a party in privity with it did so with respect to the same operative controversy. *Feenix Payment*, 2024 WL 3861376, at *5; *Ford v. Sedgwick Claims Mgmt. Servs., Inc.*, 2020 WL 2557141, at *4 (Del. Super. May 20, 2020). BCAP's counterclaims seek indemnification under the SPA for the exact same losses, the depletion of MHF's accounts and the deletion of MHF's records, that MHF now pursues under tort theories. D.I. 20 at 13. As the Restatement and Delaware case law recognize, "[w]hen

[a] corporation is closely held, . . . interests of the corporation's management and stockholders and the corporation itself generally fully coincide." *Zweigenhaft*, 2021 WL 6424061, at *3 (quoting Restatement (Second) of Judgments § 59, cmt. e). That functional alignment is indisputably present here, as MHF is BCAP's wholly owned subsidiary. D.I. 20 at 16.

The contemporaneous ownership cases MHF cites, Frey and Brambles, address derivative standing requirements that are inapposite to this dispute. D.I. 22 at 19-21. Claim-splitting does not turn on whether one affiliated entity had Article III standing to assert the precise legal theory that another affiliated entity later chose to pursue. Rather, it turns on whether the operative controversy was, or could have been, resolved in a single proceeding. *Maldonado*, 417 A.2d at 383–84. In any event, the standing debate is academic because MHF and BCAP were time-barred from adding MHF as a party in the BCAP Litigation. During discovery, BCAP's counsel realized that the statute of limitations on direct claims by MHF had run and requested that Morton sign a tolling agreement; Morton refused, as was her right. MHF itself could have sought to intervene or file a timely action but did not. Having allowed the amendment deadline to expire, MHF cannot now manufacture a second lawsuit to obtain a second bite after deliberately failing to cure the limitations problem in the first action.

## III. The Timing and Circumstances of This Filing Confirm Strategic Claim-Splitting.

The procedural history removes any doubt about what has occurred here. The deadline to amend pleadings and add parties in the BCAP Litigation was October 15, 2025. Two days after that deadline passed, BCAP's counsel requested that Morton enter into a tolling agreement with respect to claims to be filed in a separate action. Morton declined and warned against improper claim-splitting. Only three days after that warning, MHF filed this action in Arizona state court which was six days after the amendment deadline expired.

MHF's argument that it filed in Arizona because it believed Morton was still an Arizona citizen does not excuse the filing; it merely explains the choice of forum. D.I. 22 at 6. The timing confirms that this action was designed as an end-run around the expired deadline, precisely the kind of strategic claim-splitting that Delaware courts prohibit. As the Third Circuit explained in *Walton v. Eaton Corp.*, "the court must ensure that the plaintiff does not use the incorrect procedure of filing duplicative complaints for the purpose of circumventing the rules pertaining to the amendment of complaints." 563 F.2d 66, 71 (3d Cir. 1977). This Court recognized the same principle in *Leonard v. Stemtech International, Inc.*, 2012 WL 3655512, at *8 (D. Del. Aug. 24, 2012).

MHF contends it did not discover Morton's tortious conduct until Morton's deposition in September 2025 and her deal counsel's deposition in October 2025. D.I. 22 at 12. But the information on which MHF bases its claims was available well before the amendment deadline. Morton's deposition took place on September 3 and 4, 2025, over a month before the October 15 deadline, and the questions were largely tied to documents already in BCAP's possession. Indeed, BCAP discovered the approximately $7.4 million shortfall shortly after closing and raised it in its counterclaims; the underlying bank records and financial statements were in BCAP's hands from the outset. D.I. 20-1 ¶¶ 54, 56–57. MHF, a wholly owned subsidiary of BCAP, cannot credibly claim it was unaware of facts known to its parent.

The request for a tolling agreement further exposes the strategic nature of this filing. BCAP's counsel acknowledged that "it appears that Ms. Morton either: (a) took roughly $7.4M from MHF in undisclosed dividends, resulting in a breach of her reps and warranties under the SPA . . . or (b) took roughly $7.4M in violation of MHF's bylaws, resulting in tort losses to the company." D.I. 20-5 (Oct. 17, 2025 email). This framing is a concession that the tort claims and

the SPA breach claims are alternative theories of recovery for the same $7.4 million, the very definition of impermissible claim-splitting. It also reveals that BCAP and MHF recognized the tort claims were time-barred and required tolling to preserve. The SPA's survival clause, Section 7.4, required BCAP to provide written notice of any indemnification claim based on Section 2 representations by October 31, 2024. D.I. 20-2, § 7.4. BCAP did not include the $7.4 million withdrawal claim in the Direct Indemnity Notice it sent on that date. D.I. 20, at 3. Having allowed both the contractual notice deadline and the amendment deadline to lapse, BCAP and MHF filed this separate action three days after Morton declined to sign a tolling agreement. That sequence is not the product of newly discovered facts; it is the product of a calculated effort to circumvent expired deadlines through claim-splitting.

**IV. MHF's "Regular Distributions" Argument Is a Red Herring.**

MHF devotes considerable space to arguing that Morton's pre-closing withdrawals were not "regular distributions" authorized under MHF's bylaws or Arizona law. This argument is a red herring. As sole shareholder and sole director of MHF since 2000, Morton was authorized to take distributions from the company. MHF's own bylaws (Exhibit A to MHF's Complaint) and Arizona law do not prohibit a sole owner from taking lawful distributions; the board-approval requirement is satisfied when the sole director approves her own distributions. Morton's deposition testimony and the BCAP record establish that this practice was consistent with more than thirty years of conduct. MHF also mischaracterizes Morton's deposition testimony. Morton was not testifying that she was uncertain whether she received the money; she was simply unable to recall which specific account received the funds (e.g., an individual account or a trust account). That uncertainty is immaterial to whether the distributions were lawful. The relevant question under Schedule 2.32 of the SPA is whether the distributions were taken in the ordinary course of business, and the testimony and historical practice establish that they were.

## V. MHF's Proposed Stay Does Not Cure the Claim-Splitting Problem.

MHF suggests that a stay, rather than dismissal, is the appropriate remedy. D.I. 23. But Delaware courts dismiss actions that constitute impermissible claim-splitting; they do not preserve them in suspended animation. *See Feenix Payment*, 2024 WL 3861376, at *6–7; *Ford*, 2020 WL 2557141, at *3–4. As *Maldonado* cautioned, where a litigant "by his own strategy, elected to commence two actions" and thereby created the risk of inconsistent adjudications, "it is entirely proper that he bear its burdens." 417 A.2d at 385. MHF's own brief concedes that its claims would be moot if BCAP prevails on Counterclaim 3. D.I. 22 at 2.

## CONCLUSION

MHF's Answering Brief confirms rather than refutes the central premise of Morton's Opening Brief: this action and the BCAP Litigation arise from the same transaction and the same operative facts. For all the reasons set forth herein and in the Opening Brief, this action should be dismissed with prejudice.

Respectfully submitted,

**FOX ROTHSCHILD LLP**

*/s/ Sidney S. Liebesman*

Sidney S. Liebesman (No. 3702)
Carmella L. Cinaglia (No. 7032)
1201 North Market Street, Suite 1200
Wilmington, DE 19801
(302) 654-7444
sliebesman@foxrothschild.com
ccinaglia@foxrothschild.com

*Attorneys for Defendant Sherry K. Morton*

Dated: April 2, 2026

**RULE 7.1.3 CERTIFICATION**

I hereby certify that the Defendant Sherry K Morton's Reply Brief in Support of Motion to Dismiss is in Times New Roman 12-point font with at least 1-inch margins.

*/s/ Sidney S. Liebesman*
Sidney S. Liebesman (DE 3702)